IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KEITH SHAMBERGER,

                    Plaintiff,

v.                                                     Civil Action No. 3:13-cv-00645-JAG

WELLS FARGO BANK, N.A., *et al.*

                    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the *pro se* plaintiff's complaint and Motion to

Proceed *In Forma Pauperis*. (Dk. No. 1.) Upon due consideration, the Court finds the plaintiff,

Keith Shamberger, unable to pay the costs of proceeding in the instant case. The Court will

therefore grant his motion to proceed *in forma pauperis*.

For the reasons stated below, however, the Court will dismiss Shamberger's complaint.

The Court finds the factual allegations in the complaint insufficient to state a plausible claim for

relief. The Court accordingly will dismiss the complaint with prejudice.

## I. Background

This case arises out of the foreclosure of Shamberger's home in Toppings, Virginia.

(Compl. ¶ 1.) In 2005 Shamberger obtained a $90,000 mortgage loan from Union Federal Bank

of Indianapolis. (Ex. O. at 2, 15.) He signed a Promissory Note and a Deed of Trust against the

Property.[1] (*See* Ex. O.)

---

[1] After a series of mergers, The Huntington National Bank replaced Union Federal Bank of
Indianapolis as the lender for Shamberger's loan. (*See* Ex. D.) On April 27, 2012, Huntingdon
then assigned the loan to The Bank of New York Mellon f/k/a/ The Bank of New York. (*See id.*)

In a letter dated December 8, 2011, Shapiro, Brown & Alt, LLP ("Shapiro Brown") (then Shapiro & Burson, LLP) sent a notice of intent to accelerate to Shamberger. (Compl. ¶ 7; Ex. C.) The December 8 letter notified Shamberger that the trustee would hold a foreclosure sale of his property unless he paid off the accelerated loan in full. (*See* Ex. C.) On March 23, 2012 and July 17, 2012, Shapiro Brown sent Shamberger separate notices of upcoming foreclosure sales, but apparently did not sell the property. (*See* Compl. ¶¶ 7, 9.) On August 14, 2012, however, his property was sold in a foreclosure sale. (*Id.* ¶ 8.)[2] BWW Law Group, LLC sent Shamberger a Notice to Quit and Demand of Possession dated September 14, 2012, stating that unless he vacated his property within five days, he would face eviction. (Ex. F.)

Despite these letters and threats of eviction, Shamberger retained possession of his home. (*See* Compl. ¶ 1). For reasons that are unclear, on November 20, 2012, and April 1, April 18, May 6, June 7, and September 4, 2013, Shamberger received additional notices of an upcoming trustee's sale of the same property. (*Id.* ¶ 9, 11.)

On April 18, 2013, Shamberger sent a notarized document entitled "Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request" to the New York offices of JP Morgan Chase Bank and Bank of New York Mellon, and the Virginia Beach office of Shapiro Brown. (*Id.* ¶ 10.)

Shamberger now brings this action against the servicer of his mortgage, America's Servicing Company ("ASC"); Wells Fargo Bank, which operates ASC; and Shapiro Brown, the

---

[2] On August 13, 2012, Shamberger brought suit in this Court, seeking a declaration that he owned the property free and clear of all encumbrances. See 3:12-cv-577-JAG, Dk. No. 1. The Court dismissed the case for failure to obey an order to file a more particularized complaint. *Id.* at DK. No. 7. Although Shamberger's complaint says that the foreclosure occurred in August 14, 2012, he asked the Court to enjoin the sale on May 28, 2013. *Shamberger v. Linsey Kelly, et al.*, Case No. 3:13-cv-337 (dismissed for lack of subject matter jurisdiction). The chronology set forth in the complaint and in Shamberger's various suits is confusing, but the order of events does not affect the Court's decision.

law firm that "ASC hired to foreclose on [his] house." *See* Complaint at 5, *Shamberger v. Bank of N.Y. Mellon*, No. 3:12-cv-00577 (Aug. 13, 2012).

The plaintiff's complaint consists of five counts: (1) violation of the Seventh Amendment; (2) violation of the National Banking Act, 12 U.S.C. § 92a(a); (3) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601, 1692g, 1693; (4) nondisclosure and concealment; and (5) violation of Virginia Code § 8.3A-407(b). (*See* Compl. ¶¶ 13-46.)

### III. Discussion

### A. Legal Standard

Once an action is filed *in forma pauperis*, a court "shall dismiss" the case "at any time" if the court determines that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Fourth Circuit applies the *Iqbal* plausibility pleading standard to *in forma pauperis* dismissals. *See Ewing v. Silvious*, 481 F. App'x 802, 803 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must therefore dismiss an *in forma pauperis* if it does not "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,' sufficient to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Because Shamberger has filed his case *pro se*, the Court will construe the complaint more liberally than a case brought by an attorney. *See Gordon v. Leeke*, 574 F.2d 1147, *cert. denied*, 439 U.S. 970 (1978). At the same time, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits. District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

B. <u>Violation of the Seventh Amendment – Count I</u>

In Count I, Shamberger alleges that the defendants violated his Seventh Amendment right to "a trial by jury regarding the foreclosure of the Plaintiffs' Property." (Compl. ¶ 13-14.)

The Seventh Amendment does not, however, apply to this case. Virginia is a non-judicial foreclosure state. *Fedewa v. J.P. Morgan Chase Bank, N.A.*, 921 F. Supp. 2d 504, 507-508 (E.D. Va. 2013). Under Virginia law, in the event of default on a deed of trust the trustee "'may take possession of the property and proceed to sell the same at auction' without any need to first seek a court decree." *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011) (quoting Va. Code Ann. § 55-59(7)). The trustee of Shamberger's deed of trust therefore lacked "any need" to seek a court decree before foreclosing on Shamberger's property. *Id.* Shamberger, in turn, has no right to any kind of trial before foreclosure.

Even if Shamberger had a right to a judicial proceeding before his foreclosure, the Seventh Amendment still would not provide him a right to relief. The Seventh Amendment says that, "[i]n [s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The phrase "suits at common law" refers to suits at "law," "in contradistinction to equity." *Curtis v. Loether*, 415 U.S. 189, 193 (1974). Because mortgage foreclosure issues are equitable in nature, *United States v. Lariscy*, 16 F.3d 413 (4th Cir. 1994) (unpublished table opinion) (citing *Rozelle v. Connecticut Gen. Life Ins. Co.*, 471 F.2d 29, 31 (10th Cir.1972), *cert. denied*, 411 U.S. 921 (1973)), "foreclosure [actions] . . . do not afford the right to a jury trial." *Id.*

Shamberger did not have a right to any trial at all, much less a jury trial, before the foreclosure. The Court accordingly dismisses Count I with prejudice.

C. <u>Violation of 12 U.S.C. § 92a(a) – Count II</u>

Next, Shamberger alleges that Wells Fargo violated 12 § U.S.C. 92a(a).  (Compl. ¶ 16-24.)  Section 92a(a) gives the Comptroller of the Currency authority to grant a "national bank" powers to act as a fiduciary "when not in contravention of State or local law."  The complaint asserts that Wells Fargo, as a national bank governed by the National Banking Act, violated three sections of the Virginia Code (§§ 55-157, 55-66.3, 55-66.6) and therefore violated § 92a(a).  (*Id.* ¶ 16- 18.)

Section 92a(a) simply limits the authority of the Comptroller of the Currency to authorize national banks to act as fiduciaries: the Comptroller may not allow nation banks to serve as fiduciaries where state law forbids state banks to do so.  *See* § 92a(a).  "State or local law" in the context of § 92a(a) means "the law of the state . . . governing the fiduciary relationship." 12 C.F.R. § 9.1(b) (2013); *see also Am. Trust Co., Inc. v. S. Carolina State Bd. of Bank Control*, 381 F. Supp. 313, 322-23 (D.S.C. 1974) (discussing South Carolina law regarding the power of a bank to serve as a testamentary trustee).  This statute does not make federal questions out of all alleged defalcations of bank fiduciaries.

Nevertheless, Shamberger relies on alleged violations of provisions of Virginia law dealing with two issues: (1) the requirements for a deed of assignment for the benefit of creditors (§ 55-157) and (2) release of a deed of trust or other lien through a certificate of satisfaction (§§ 55-66.3, 55-66.6).  Neither allegation raises a cognizable claim.

First, Shamberger claims that Wells Fargo violated § 55-157 because the bank failed to name a "Substitute Trustee[] that resided in the County or City in which the property was conveyed" when assigning his property.  (Compl. ¶ 18.)  Shamberger takes this Code section out of context.

5

Section 55-157 is part of Chapter 9 of the Virginia Code, dealing with "assignments for benefit of creditors." *See* Va. Code § 55-157. In contrast to an involuntary assignment among lenders, an "assignment for the benefit of creditors is a *voluntary transfer* by *a debtor* of his property to an assignee, in trust, to use the property and proceeds thereof to pay his debts and return the surplus, if any, to him." *In re A & B Liquidating, Inc.*, 18 B.R. 922, 924 (Bankr. E.D. Va. 1982) (emphasis added). The assignment of Shamberger's property is involuntary—indeed, Shamberger has previously challenged the assignment in this Court[3]—and does not constitute an assignment for benefit of creditors. *Cf. id.* Section 55-157 and its rule for location of a substitute trustee therefore do not apply to Shamberger's situation.

Second, Shamberger alleges that the defendants violated Virginia Code §§ 55.63.3 and 55.66.6 by not "ensuring that the certificates of satisfaction regarding any purchases of the Plaintiff's mortgage were filed in the timeframe mandated by the Code of Virginia." (Compl. ¶ 21.).

A "certificate of satisfaction" consists of a filing by a lender after a debtor has paid off a mortgage, in order to "clear[] the land records of encumbrances on the title." *See Wells Fargo Funding v. Gold*, 432 B.R. 216, 219 (E.D. Va. 2009). Shamberger has not paid off his mortgage. (*See* Exs. J, K.) Defendants therefore have no obligation to file a certificate of satisfaction under §§ 55.63.3 and 55.66.6.

In sum, Shamberger does not allege sufficient facts to state a plausible claim for relief in Count II, which the Court therefore dismisses.

---

[3] *See* Complaint at 2, *Shamberger v. Shapiro, Brown, & Alt*, No. 3:13-cv-00337-JAG ("Keith Shamberger request[s] the court issue an order immediately restraining Defendants from selling, assigning, transferring or conveying Keith Shamberger['s] real property.").

**D. Violation of 15 U.S.C. §§ 1601, 1692g, 1693 – Count III**

The plaintiff's third count asserts that the defendants, as debt collectors under the Fair Debt Collection Practices Act (FDCPA), violated 15 U.S.C. §§ 1601, 1692g, and 1693.

*1. Violation of 15 U.S.C. § 1692g*

Shamberger says the defendants[4] did not properly provide him information about his debt pursuant to 15 U.S.C. § 1692g. Specifically, Shamberger alleges the defendants violated § 1692g by: (1) failing to "submit[] all information requested in the Qualified Written Request [(QWR)] submitted by the Plaintiff,"[5] (2) "not returning the Response [to] the QWR as require[d] by 15 USC 1692g within 5 days after the initial communication with the consumer," and (3) breaching its "duty to inform the Plaintiff that the actual debt was 'zero'" and "that the mortgage was actually 'paid in full.'" (Compl. ¶¶ 29-32.)

The FDCPA places certain notification requirements on debt collectors. First, § 1692g(a) requires debt collectors to send a debtor written notice containing specific information about the debt, including "the amount of the debt," within "five days after the initial communication with a consumer." § 1692g(a)(1). In addition, § 1692g(b) provides that if a debtor disputes his or her

---

[4] The complaint brings Count III against "the Defendants" generally (Compl. ¶¶ 26, 27) and "[t]he Defendant ASC" more specifically (*Id.* ¶ 28). However, Shamberger apparently sent the April 18, 2013 letter only to the New York offices of JP Morgan Chase Bank and Bank of New York Mellon, and the Virginia Beach office of Shapiro Brown. (*See* Ex. I.). As JP Morgan Chase Bank and Bank of New York Mellon are not defendants in this action, the Court analyzes this claim only with respect to a possible violation of the FDCPA by Shapiro Brown. To the extent that the plaintiff also asserts FDCPA claims against ASC, the Court similarly dismisses these claims. *See Ruggia v. Washington Mut.,* 719 F. Supp. 2d 642, 648 (E.D. Va. 2010) *aff'd,* 442 F. App'x 816 (4th Cir. 2011) ("It is well-settled that provisions of the FDCPA generally apply only to debt collectors . . . and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.").

[5] The Court notes that the "Qualified Written Request" to which Shamberger refers pertains to the Real Estate Settlement Procedures Act, not to the FDCPA. *Compare* 12 U.S.C. § 2605(e)(B) *with* 15 U.S.C. § 1692g. The Court therefore analyzes this "Qualified Written Request" as if it were an ordinary letter.

debt in writing within thirty days of the initial notice of the debt, the debt collector must stop collection activities until it mails the consumer a verification of the debt. § 1692g(b); *see also Vitullo v. Mancini*, 684 F. Supp. 2d 760, 761 (E.D. Va. 2010).

Shamberger does not state whether his claim addresses § 1692g(a) or § 1692g(b). The former provision, however, appears more consistent with the allegations in his complaint. *See* § 1692g(a).

Applying § 1692g(a) to Shamberger's complaint does not get him very far. The notification requirements in § 1692g(a) pertain only to the debt collector's "initial communication with a consumer in connection with the collection of any debt," not subsequent communications. *See* § 1692g(a); *see also Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 917 (7th Cir. 2004). Shamberger argues that his letter constitutes the "initial communication with a consumer" for purposes of § 1692g, and that the FDCPA therefore required Shapiro Brown to respond within five days with information about his loan. (*See* Compl. ¶ 29.) An "initial communication" as described in § 1692g is not, as Shamberger implies, a communication from a consumer to his or her debt collector. (*See id.* ¶¶ 27, 29.) Rather, "§ 1692g(a) applies to the 'initial communication' *from the debt collector.*" *Dikun v. Streich*, 369 F. Supp. 2d 781, 788 (E.D. Va. 2005) (emphasis added).

In addition, Shamberger's April 18, 2013 communication would not be the *initial* communication between Shamberger and Shapiro Brown, assuming Shapiro Brown was a "debt collector" within the FDCPA. Shamberger has been the debtor on his mortgage loan since 2005 and in this time received numerous notices of foreclosure from Shapiro Brown (*see, e.g.*, Exs. C, C1, E). These notices constitute "communication[s] in connection with a debt." *See Wilson v.*

*Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376, 379 (4th Cir. 2006) (foreclosure and acceleration notices from law firm retained by bank were "in connection with a 'debt'").

As the April 18, 2013 letter was not the "initial communication" for the purposes of the FDCPA, Shapiro Brown did not have an obligation to provide Shamberger with the information required under § 1692g(a). Accordingly, his § 1692g(a) claim fails to state a plausible claim for relief.

### 2. *Violations of 15 U.S.C. §§ 1601 and 1693*

Shamberger also claims that the defendants violated §§ 15 U.S.C. 1601 and 1693. (Compl. ¶ 31-33.) These sections are congressional findings and "purpose" sections of the Truth in Lending Act and the FDCPA, respectively. With respect to violations of these sections, the complaint provides only that "[t]he Defendant[s] . . . are in violation of [t]he Fair Debt Collection Practices Act 15 USC§[§] 1601, . . . 1693" and "produc[ed] a deceitful and unconscionable contract." (*Id.* ¶ 31.) Under the *Iqbal* standard, the Court must find these "mere conclusory statements" insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

### E. Nondisclosure and Concealment – Count IV

Shamberger next alleges that the defendants are liable for concealment and nondisclosure. (Compl. ¶¶ 34- 37.) Shamberger says that because the defendants did not provide him with "all of the information requested on [his] Qualified Written Report," "it is clear that the information requested is being concealed." (*Id.* ¶ 34.)

The plaintiff defines "non-disclosure" and "concealment" separately. (*See id.*) He asserts that "non-disclosure" is simply "[a] failure to reveal facts," whereas "concealment" is "[a] withholding of something which one knows and which one, in duty[,] is bound to reveal." (*Id.* (quoting *Black's Law Dictionary* 261, 949 (5th ed. 1979)).

9

Virginia common law governs this claim. *See Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). Virginia law does not have a cause of action for "non-disclosure" as defined by the plaintiff. *See Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998) ("[W]e have required either an allegation or evidence of a knowing and a deliberate decision not to disclose a material fact."). Accordingly, the plaintiff does not have a plausible claim for defendants' "failure to reveal facts;" he must assert a *knowing* failure to reveal facts.

The plaintiff's claim for "concealment" also fails to state a claim. First, "[i]n all cases of fraud the plaintiff must prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation (or on the assumption that the concealed fact does not exist)." *Bank of Montreal*, 193 F.3d at 827. Shamberger does not describe his "actual and justifiable reliance" on the alleged concealment. *See Bank of Montreal*, 193 F.3d at 827. Shamberger claims that as a result of concealment of how the lenders "were able to foreclose on his Property and by what means they are attempting to foreclose on it again," he suffered "emotionally and physically." (Compl. ¶ 37.) He does not describe what the lenders concealed or how he relied on it. The plaintiff had detailed information about the amount due on his loan, acceleration, and foreclosure from his Deed of Trust and promissory note. (*See* Ex. O.[6]) The plaintiff's resulting distress does not appear to stem from justifiable reliance on concealed information.

Moreover, fraud claims are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). In "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud," *id.*, by alleging with particularity "the time, place, and contents of the false

---

[6] Paragraph 22 of the Deed of Trust states that any breach of the Deed of Trust is a default (Ex. O at 13); Shamberger's obligations under the Deed of Trust include making his monthly "Periodic Payments." (*Id.* at 3; Ex. N. at 1). If default is not cured, the Deed of Trust further provides that after notice of default, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale." (Ex. O at 13.)

representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).

Shamberger fails to describe with particularity the "contents of the false representations" as required by Rule 9(b). He notes that "the Defendants . . . are concealing important and pertinent information from the Plaintiff regarding his mortgage loan" and that the "Defendants . . . had a duty to send to the Plaintiff all of the information requested in the [Qualified Written Request]." (Compl. ¶¶ 35, 37.) His complaint does not further describe the concealed information and therefore fails the Rule 9(b) requirement. *See Givens v. Citibank, N.A.*, No. 1:09-cv-1096, 2010 WL 2306412, at *4 (E.D. Va. June 3, 2010). Accordingly, the Court dismisses the nondisclosure and concealment claims with prejudice.

### F. Violation of Va. Code § 8.3A-407(b) – Count V

Finally, Shamberger alleges the defendants had a duty under Uniform Commercial Code (UCC) 3-407 to ensure a notary was present on June 8, 2005, when the plaintiff signed the Deed of Trust. He asserts that the defendants applied a notary's signature only "after the Plaintiff signed his Deed of Trust and Note, but [] not in the Plaintiff's presence . . . violating UCC 4-307 [sic]." (Compl. ¶ 44.) He claims that the Deed of Trust and Promissory Note are therefore void. (*Id.* ¶¶ 41-44.)

Virginia has adopted UCC 3-407 as Virginia Code § 8.3A-407(b). According to § 8.3A-407(b), "an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other

alteration discharges a party, and the instrument may be enforced according to its original terms."

To constitute "an alternation fraudulently made," *id.*, the "alternation . . . must involve some type of actual fraud, dishonesty or deceit.'" *Bus. Bank v. Plank*, 710 F. Supp. 619, 622 (E.D. Va. 1989). As discussed in Count IV, a complaint alleging fraud must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. Fed. R. Civ. P. 9(b); *Givens*, WL 2306412, at *4.

Here, the plaintiff apparently received his loan and spent the proceeds, presumably on his house. This alone prevents him from asserting irregularitries of this sort as a defense. He does not get to keep the money and not repay the debt.

He does not allege fraud, dishonest, or deceit. The plaintiff's complaint alleges only that the defendants did not have a notary present when the plaintiff signed the Deed of Trust. (*See* Compl. ¶¶ 38-46.) He therefore fails to provide particularized information about the "contents of the false representations," as well as "the identity of the person making the misrepresentation and what he obtained thereby." *See Harrison*, 176 F.3d at 784. The Court therefore dismisses Count V.

### III. Conclusion

For the reasons described above, the Court dismisses the plaintiff's case with prejudice. The Court will enter an appropriate order.

/s/
John A. Gibney, Jr.
United States District Judge

Date: <u>November 13, 2013</u>
Richmond, VA